**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

JENNIFER A. PERRIN,

     Plaintiff,

v.                                                  Case No.: 4:10cv141

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

FILED

DEC 16 2011


## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

The plaintiff, Jennifer A. Perrin ("Perrin"), brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed March 9, 2011. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED.

-1-

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Perrin was born October 10, 1955.  She was fifty-two years old at the amended alleged onset date of disability, March 31, 2008.[1] Perrin has completed high school and attended at least four years of college. R.[2] 154.  She has past work experience installing and supervising the installation of insulation, supervising warehouse operations, and managing a fast food establishment. R. 14, 165-71. In April 2007, Perrin fell from a ten foot ladder on a job site and injured her knee, which ultimately required surgery.  R. 283.  She alleges that she has been unable to work since that time.

On November 30, 2007, Perrin filed an application for disability insurance benefits alleging a disability onset date of April 7, 2007, due to chronic arthritis in her right hip, mild arthritis in her left hip and back, and the need for a hip and right knee replacement. R. 113, 149-50.  Perrin's application was initially denied by the Social Security Administration ("SSA") on February 15, 2008, and was denied again on reconsideration on June 6, 2008. R. 67, 86.

---

[1] The ALJ's decision states that Perrin was fifty-one at the alleged onset date of disability. R. 14.  This statement is erroneous because the ALJ acknowledged earlier in his decision that Perrin amended the alleged onset date of disability from April 7, 2007 to March 31, 2008, at her hearing. R. 11. As of March 31, 2008, Perrin was fifty-two years old.
[2] "R." refers to the certified administrative record of proceedings relating to this case (ECF No. 7), filed under seal pursuant to Local Civil Rule 7(C)(1).

On July 2, 2008, Perrin, represented by counsel, requested a hearing before an ALJ of the SSA. R. 93-94. On August 8, 2008, Perrin's counsel withdrew. R. 102. On August 19, 2009, Perrin appeared before an ALJ, but the hearing was postponed to allow Perrin to find new counsel. R. 22-28. On November 6, 2009, a second administrative hearing was held, during which Perrin was represented by counsel. R. 29-55. At the November 6, 2009 hearing, Perrin amended her claim, stating that her disability in fact began on March 31, 2008. R. 34. During the hearing, the ALJ examined Perrin concerning the nature of her impairments and limitations. The ALJ also heard testimony from Vocational Expert Robert Edwards regarding Perrin's ability to perform jobs in the economy. R. 46-54.

On December 8, 2009, the ALJ issued a decision, finding that Perrin was not entitled to disability insurance benefits because she had the residual functional capacity to perform medium work with some limitations and was capable of doing jobs available in the local and national economy. R. 6-21. On January 19, 2010, Perrin requested that the Appeals Council of the SSA's Office of Hearings and Administration review of the ALJ's decision. R. 4-5. On August 6, 2010, while review was pending, Perrin apparently sent a letter to the Appeals Council containing new evidence of disability not seen by the ALJ. ECF No. 19, Attach. 2 [hereinafter "Pl.'s Supplement"]. This evidence does not appear in the

-3-

administrative record, and it is unclear whether the Appeals Council ever received it.    On September 2, 2010, the Appeals Council denied Perrin's request to review the ALJ's decision, making the ALJ's decision the "final decision" of the Commissioner and subject to judicial review pursuant to 42 U.S.C. § 405(g).   20 C.F.R. §§ 404.981, 416.1481.

Sometime after the ALJ rendered his decision, Perrin filed a second application for disability benefits, which the SSA allegedly granted.[3] ECF No. 15, at 4.   According to Perrin, the latter decision states a disability onset date of December 9, 2009, one day after the ALJ's decision denying Perrin benefits. Id.

Perrin brought this action seeking judicial review of the Commissioner's decision denying her claim for disability insurance benefits.   Perrin filed a motion for leave to proceed in forma pauperis on November 1, 2010, which was granted on December 23, 2010. ECF Nos. 1-2. The plaintiff filed her complaint on December 23, 2010, and the defendant answered on March 3, 2011. ECF Nos. 3, 6.    The plaintiff filed a motion for summary judgment with memorandum in support on May 11, 2011. ECF Nos. 14-15.    The defendant filed a motion for summary judgment with memorandum in support on June 7, 2011.   ECF Nos. 16, 18.   The plaintiff submitted a reply to the defendant's motion on June 7, 2011.   That same day,

---

[3]  Perrin has not indicated when the second application was submitted, when benefits were granted, or provided documentation of the favorable decision to the Court.

the plaintiff filed a Motion to Supplement the Record.   The plaintiff's motion seeks to supplement the "evidentiary record" with medical documentation that she allegedly sent to the Appeals Council but that was never incorporated into the administrative record. ECF No. 19.   The defendant has not opposed this motion. The Court has considered these materials in arriving at its recommendation, but it is without power to supplement the record developed during the administrative proceedings on Perrin's claim.[4] Accordingly, the Plaintiff's Motion to Supplement the Record is DENIED.

As neither party has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for decision based on the motion papers and memoranda. See Local Civil Rule 7(J).

## II.   THE ALJ'S DECISION

### A. Substantive Law

SSA Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the

---

[4] As discussed more fully below, a Court may only consider evidence not before the ALJ to determine whether the evidence is "new and material" under Sentence Six of 42 U.S.C. § 405(g). See Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972) ("Reviewing courts are restricted to the administrative record in performing their function of determining whether the Secretary's decision is supported by substantial evidence); Babcock v. Astrue, No. 3:10CV431, 2011 WL 2899165, at *3 (E.D. Va. April 5, 2011) (explaining that a court may only consider newly submitted evidence that was not before the ALJ in the context of a Sentence Six remand).

> inability to do any substantial gainful activity
> by reason of any medically determinable physical
> or mental impairment[5] which can be expected to
> result in death or which has lasted or can be
> expected to last for a continuous period of not
> less than 12 months.

20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C.

§ 423(d)(1)(a). To meet this definition, the claimant must have a

severe impairment which makes it impossible to do previous work or

any other substantial gainful activity[6] that exists in the national

economy. 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C.

§ 423(d)(2)(A).

The Commissioner follows a five-step sequential analysis set

forth at 20 C.F.R. §§ 404.1520 and 416.920 to ascertain whether the

claimant is disabled. See Hall v. Harris, 658 F.2d 260, 264-65

(4th Cir. 1981). Under this process, the ALJ must determine, in

sequence:

(1)  Whether the claimant is engaged in substantial gainful

      activity (i.e., whether the claimant is working). If so,

      the claimant is not disabled and the inquiry is halted.

---

[5] A "physical or mental impairment" is an impairment resulting from
"anatomical, physiological, or psychological abnormalities which
are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques." 42 U.S.C. § 423(d)(3).
[6] "Substantial gainful activity" is work that (1) involves
performing significant or productive physical or mental duties, and
(2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510,
416.910.

(2)   Whether the claimant has a severe impairment.  If not, then the claimant is not disabled and the inquiry is halted.

(3)   Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria.  If so, the claimant is disabled and the inquiry is halted.

(4)   Whether the impairment prevents the claimant from performing past relevant work.  If not, the claimant is not disabled and the inquiry is halted.

(5)   Whether the claimant is able to perform any other work considering both her residual functional capacity and her vocational abilities.  If so, the claimant is not disabled.

### B. The ALJ's Findings of Fact and Conclusions of Law

In this case, the ALJ reached the fifth step of the sequence, at which point he determined that Perrin was not disabled.

### 1. Steps One Through Three

The ALJ first determined that Perrin had not engaged in substantial gainful activity at any time since March 31, 2008, the alleged onset date of disability. R. 11.  At step two, the ALJ found that Perrin had the following severe impairments: bilateral

-7-

hip arthritis and arthritis of the right knee.[7] R. 12.   At step three, the ALJ found that Perrin did not have an impairment, or combination of impairments, listed in, or medically equal to, one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. R. 12.

## 2. RFC Determination

Prior to steps four and five, the ALJ determined Perrin's residual functional capacity ("RFC") based on his evaluation of the evidence, including Perrin's testimony, the findings of treating and examining physicians, and the state agency's disability determination rendered by two non-examining physicians. R. 12-14. Based on the evidence as a whole, the ALJ determined that Perrin retained the RFC to perform medium work with some restrictions, specifically that she "can only occasionally climb ramps and stairs, [and never] ladders, ropes or scaffolds.  She can also only occasionally stoop, kneel, crouch and crawl and perform jobs in which she can alternate sitting and standing at will due to her bilateral hip arthritis and right knee arthritis."[8] R. 12.

---

[7]  The ALJ noted that "[a]ll other alleged impairments are nonsevere," but did not specify to which impairments he was referring. R. 12.

[8]  A person is capable of performing medium work when she has the physical exertional capacity to "lift[] no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" and the ability to sit, stand, or walk for long periods of time. See 20 C.F.R. § 404.1567(a)-(c).

The ALJ gave "great weight" to the opinions of the state's non-examining consultants, finding them "well supported and consistent with the medical evidence in the record." R. 13. The first consultant, Dr. Michael Cole, completed his RFC assessment on February 2, 2008 based on the medical evidence documenting Perrin's impairments up to that date.[9] R. 277. The second consultant, Dr. Carolina Longa, completed her RFC assessment on June 4, 2008, based on the medical evidence through that date. R. 312. Both consultants found that Perrin was capable of lifting 25 pounds frequently and fifty pounds occasionally, (R. 271, 306), but that she could only occasionally stoop, bend, kneel, crouch, crawl, and climb ropes, ladders, and scaffolds, (R. 272, 307). The consultants also found that she must avoid hazardous machinery and heights. R. 273, 308.

The ALJ gave "little weight" to the Medical Source Statement completed by Dr. Kingston, which stated that Perrin could only sit for thirty minutes at a time, stand for fifteen minutes at a time, and walk for fifteen minutes at a time. R. 13, 357. During the period under consideration, Dr. Kingston was Perrin's treating physician. R. 13. The ALJ attributed little weight to Dr. Kingston's opinion due to the fact that Dr. Kingston did not provide answers to questions concerning how much Perrin was capable of lifting, that Dr. Kingston had not seen Perrin for over a year

---

[9] The Court notes that this evaluation was performed more than one month before Perrin's amended alleged disability onset date of March 31, 2008.

at the time he completed the Statement, and that Dr. Kingston's treatment notes indicate only moderate symptoms and conservative treatment for Perrin's knee pain. R. 13, 267-69, 352-55.

The ALJ gave "great weight" to Dr. Wilford Gibson's opinion that, although Perrin suffered from osteoarthritis of her right hip, she did not require specific treatment and that, at the time of his examination, he did not observe obvious effusion in her right knee. R. 13-14, 285, 287. Dr. Gibson examined Perrin and her prior medical records on March 7, 2008 in relation to a worker's compensation claim that she was pursuing at the time. R. 283-88.[10] In addition to the observations noted by the ALJ, Dr. Gibson noted that Perrin had reduced right dorsiflexion, could not rotate her hip more than forty degrees while lying supine, and complained of pain when asked to rotate through her lumbar spine.  R. 285.

### 3. Steps Four and Five

At step four, the ALJ concluded that Perrin's ability to perform a limited range of medium work prevented her from performing past work, which required heavy, medium, and light physical exertion.[11] R. 14.

---

[10] The ALJ's decision provides two dates concerning Dr. Gibson's opinion, July 20, 2007 and July 7, 2008.  Neither of these dates appears to correspond with evidence from Dr. Gibson in the record. The record contains a letter from Dr. Gibson explaining that he examined Perrin and her medical records on March 7, 2008.  R. 283-88. Accordingly, the Court construes the ALJ's reference to Dr. Gibson's opinion as referring to this document.

[11] See 20 C.F.R. § 404.1567.

At the fifth step, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy." R. 14.   In arriving at this conclusion, the ALJ relied on the testimony of Vocational Expert Robert Edwards.   Mr. Edwards testified that Perrin could perform unskilled jobs requiring light exertion, such as office helper, office clerk, cashier, and customer service clerk; unskilled sedentary jobs such as office clerk or order clerk; and semi-skilled sedentary jobs such as schedule/appointment clerk and office clerk.

The ALJ noted that Mr. Edwards's testimony was not completely consistent with the Dictionary of Occupational Titles ("DOT") because the DOT does not account for claimants who may require the option of alternating between sitting and standing at will.   R. 15.  The ALJ nevertheless incorporated the sit/stand option into one of the hypotheticals he asked Mr. Edwards at Perrin's hearing.   Based on Mr. Edwards's expertise and experience as a vocational counselor, the ALJ gave his testimony full credit.   R. 15, 48. Relying on Mr. Edwards's testimony and Medical-Vocational Rule 203.23, the ALJ concluded that Perrin was capable of adjusting to

work existing in significant numbers in the national economy and that "a finding of 'not disabled' was appropriate."[12] R. 15.

### III. ISSUES ON APPEAL

The sole issue on appeal is whether the Court should remand the Commissioner's decision denying Perrin benefits to the SSA so that the Commissioner may consider evidence concerning Perrin's impairments that allegedly came to light after the ALJ rendered his decision.[13] See 42 U.S.C. § 405(g) (allowing remand to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.")

### IV. STANDARD OF REVIEW

Generally, the Court reviews the Commissioner's final decision under sentence four of 42 U.S.C. § 405(g) to determine whether the Commissioner's findings are supported by substantial evidence. In

---

[12] Where a claimant can only perform some of the requirements of a particular exertional level, the medical-vocational rules found in Appendix 2 of 20 C.F.R. Part 404 Subpart P provide a framework for determining whether a claimant is disabled but should not be relied on exclusively. See Hyatt v. Apfel, 153 F.3d 720, 1998 WL 480722, at *3 (unpublished table decision)(explaining that the ALJ correctly relied on the testimony of a vocational expert in conjunction with the medical-vocational rules in reaching the conclusion that a claimant who needed to alternate between sitting and standing was not disabled); Soc. Sec. Ruling 83-14, 1983 WL 31254, at *3; Soc. Sec. Ruling 83-12, 1983 WL 31253, at *1-*2.

[13] In her complaint, Perrin alleged that the ALJ's decision was not supported by substantial evidence. ECF No. 2, at 3. The Court will not address this charge because Perrin states in the memorandum in support of her motion for summary judgment that the ALJ did not commit any prejudicial or factual errors based on the evidence in the record at the time he rendered his decision. ECF No. 15, at 7.

such instances, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Rather, the inquiry is whether the evidence the ALJ considered in reaching his conclusion is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)), and whether the conclusion is based upon a correct application of the relevant law, see Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.").

Review of the Commissioner's decision pursuant to Sentence Six of 42 U.S.C. § 405(g) requires a different inquiry. Under Sentence Six, the reviewing court "does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991). A court may grant a sentence six remand where (1) the evidence is neither cumulative nor duplicative of evidence submitted in a prior proceeding, see Wilkins v. Sec'y, Dep't of Health & Human Servs.,

-13-

953 F.2d 93, 96 (4th Cir. 1991); (2) the evidence is relevant to the determination of disability at the time the claimant filed her application and the Commissioner's decision might reasonably have been different had the new evidence been considered; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has made a general showing of the nature of the new evidence to the reviewing court, see Miller v. Barnhart, 64 F. App'x 858, 859 (4th Cir. 2003); Womack v. Astrue, No. 3:10CV165, 2010 WL 4874935, at *4 (E.D. Va. October 20, 2010). The plaintiff bears the burden of satisfying each of these conditions. See Latchum v. Astrue, No. 4:10CV00050, 2011 WL 3489880, at *6 (W.D. Va., July 25, 2011).

## V.   NEW EVIDENCE

Perrin argues that doctors' notes created between March 25, 2010 and July 21, 2010 constitute new and material evidence warranting consideration by the Commissioner under Sentence Six. According to Perrin, the new evidence documents the following:

1) On July 21, 2010, the claimant was newly diagnosed with adjustment disorder with depressed mood and prescribed Lexapro. She was also newly diagnosed with chronic back pain.

2) On June 23, 2010, she was newly diagnosed with bilateral edema in her feet and ankles.

3) Throughout the period of these medical records the claimant has been prescribed Duragesic (Fentanyl) and Vicodin for pain, and ProAir, Albuterol, and Qvar for her pulmonary impairments.

-14-

> 4)    Throughout the time period of these medical records
>        her  chronic  hip  pain  and  chronic  knee  pain
>        persisted.

Pl.'s Supplement, at 1.  Perrin explains that the contents of these

records were not available at the hearing before the ALJ because

she was uninsured and only had limited access to medical treatment

at that time. Id. at 2.  She was apparently approved for Medicaid

in January 2010 and became able to pay for care at that time. ECF

No. 15, at 6.  Perrin has provided a letter indicating that she

submitted the records to the Appeals Council on August 6, 2010, but

there is no evidence that they were received or considered. Pl.'s

Supplement, at 1.[14]

     The earliest document in those submitted to the Court is an

examination and treatment note from Dr. Laura McAleer-Leavey dated

March 24, 2010.  Pl.'s Supplement, at 23-25. Perrin presented to

Dr. McAleer-Leavey complaining of malaise, nasal congestion, cough,

and dyspnea. Id. at 24.  She also "c[omplained] o[f] arthritis in

her right hip and right knee," and said she "can't sit/stand and

walking is uncomfortable," and that she was "constantly in pain."

---

[14] The Secretary's regulations permit a claimant who is dissatisfied
with the ALJ's decision to appeal the decision to the Appeals
Council and submit additional evidence with the appeal. See 20
U.S.C. §§ 404.968, 404.970(b). "If new and material evidence is
submitted, the Appeals Council shall consider the additional
evidence only where it relates to the period on or before the date
of the administrative law judge hearing decision." 20 C.F.R. §
404.970.   Moreover,  "nothing  in  the  Social  Security  Act  or
regulations promulgated pursuant to it requires that the Appeals
Council explain its rationale for denying review." Meyer v. Astrue,
--F.3d--, 2011 WL 6008976, at *4 (4th Cir. Dec. 2, 2011).

Id.  She was not on any pain medication at the time, but asked for a new pain prescription, stating that she had previously been on generic Vicodin and that "[T]ramadol is like 'taking candy.'" Id. Perrin explained that she had asthma, but that she was not on any medication for it because she had never refilled her prescription. Id.  Dr. McAleer-Leavey noted that Perrin's breathing was normal, that she had no edema, and that she used a cane. Id.  At this appointment, Dr. McAleer-Leavey entered diagnoses of "Knee Pain, Chronic," "Hip Pain, Chronic," "Asthma, with Acute Exacerbation," "Asthma," "Osteoarthritis, Knee," and "Osteoarthritis, Hip." Id. She also entered a medical history including "Asthma, H[istory] of", "Pneumonia," and "H[istory] of Seasonal Rhinitis." Id.  Dr. McAleer-Leavey wrote a series of prescriptions, including several asthma medications, an antibiotic for Perrin's flu-like illness, and Vicodin for her pain. Id.  Dr. McAleer-Leavey also referred Perrin to an orthopedist for long-term pain management. Id.

On April 30, 2010, Perrin saw Dr. Robert S. Winfield at the Riverside Pain and Infusion Center. Pl.'s Supplement, at 21-22. Perrin told Dr. Winfield that Vicodin "only makes her sleepy," and rated her pain as 9 out of 10. Id. at 21.  Dr. Winfield noted that Perrin had a "decreased range of motion to internal rotation at the right hip.  She does have increased pain with this." Id. at 22.  He also noted she was in "no acute distress," and was breathing normally. Id.  He diagnosed Perrin with "right hip pain, secondary

to presumed degenerative joint disease." Id.   He prescribed a Duragesic patch for her pain,[15] and also recommended Perrin join a local gym for aquatic arthritic classes. Id.

On May 13, 2010, Perrin had an appointment with Nurse Practitioner ("NP") Candace Ross-Cleary. Pl.'s Supplement, at 19-20.  Perrin complained of rashes under her Duragesic patch. Id. at 19.  Perrin stated that the patch had been helpful for her pain, but that she had removed it due to the rash. Id.  Perrin stated that her pain rated an eight out of ten with the patch on, and a ten out of ten with the patch off. Id.  NP Ross-Cleary determined that the rashes were caused by the adhesive on the Duragesic patch, and could be cured by rotating the patch across more locations. Id. at 20.  NP Ross-Cleary entered a diagnosis of "Dermatitis." Id.

On May 19, 2010, Perrin had an appointment with Dr. McAleer-Leavey for a physical exam and pap smear. Pl.'s Supplement, at 16-18.  Perrin complained of joint pain. Id. at 17.  She denied any breathing trouble, joint swelling, or back pain. Id.  Dr. McAleer-Leavey noted no breathing trouble or edema. Id.  Dr. McAleer-Leavey noted no new problems, removed Perrin's prescription for Vicodin, ordered blood work and other testing, and referred Perrin to gastroenterology. Id. at 17-18.  Perrin's blood work was completed on the same day, and was within normal limits except for

---

[15] A Duragesic patch is apparently a method of delivering narcotic pain medicine through the skin to manage long-term or chronic pain.

a Vitamin D deficiency. Id. at 13-15. A bone density test completed on May 20, 2010 was within normal limits as well. Id. at 11-12.

On May 26, 2010, Perrin had a follow-up visit with Dr. Winfield at Riverside Pain Management. Pl.'s Supplement, at 9-10. Perrin stated that her worst pain was still in her right hip. Id. at 9. She stated that using the Duragesic patch, her pain was 60-70% better, but that she still could not walk very far and needed to use the riding cart at the grocery store. Id. Without the patch, she stated that her pain still rated a ten out of ten. Id. Dr. Winfield noted that rotating Perrin's right hip caused pain. Id. He also noted that Perrin exhibited no "pain behavior," and that her respiratory effort was normal. Id. Dr. Winfield re-diagnosed Perrin with "Knee Pain - Chronic" and "Hip Pain - Chronic", and wrote a new Duragesic prescription. Id. at 10.

On June 23, 2010, Perrin had a follow-up appointment with Dr. McAleer-Leavey. Pl.'s Supplement, at 7-8. Perrin complained of a "nasty" cough unlike her usual asthma cough, and separately of fluid buildup in her feet and ankles. Id. at 7. Dr. McAleer-Leavey diagnosed Perrin with "Dependent Edema," "History of Asbestos Exposure," and "Cough." Id. at 8. She prescribed Hydrochlorothiazide to deal with the swelling in Perrin's ankles, and sent Perrin for a chest X-ray. Id. The X-ray was completed on July 14, 2010, and came back negative for asbestosis. Id. at 5-6.

-18-

On July 21, 2010, Perrin had another follow-up visit with Dr. McAleer-Leavey. Pl.'s Supplement, at 3-4.  Perrin stated she was "feeling very depressed" and "crying all the time." Id. at 3.  She stated she was "tired all of the time and hurts 24/7," couldn't work and couldn't help her husband. Id.  She stated she had been on Prozac once before, and wanted to try something different. Id.  She also noted that she needed Dr. McAleer-Leavey to fill out work limitation paperwork and a functional capacity evaluation for Perrin. Id.  Dr. McAleer-Leavey noted that Perrin was "crying easily." Id. at 4.  She also noted Perrin's chronic hip pain as "deteriorated," and further diagnosed Perrin with "Adjustment Disorder with Depressed Mood" and "Back Pain, Chronic." Id.  Dr. McAleer-Leavey prescribed Lexapro for Perrin's depression. Id.

According to Perrin, the Commissioner relied on the forgoing evidence in granting her benefits commencing December 9, 2009, the day after the Commissioner's previous denial became final. ECF No. 15, at 4.  Perrin has not provided the Court with documentation of the Commissioner's favorable decision or stated any specific grounds on which it was based.  She nevertheless argues that remand is warranted because it is illogical for the Commissioner to declare that she was not disabled as of December 8, 2009 but subsequently conclude that she was disabled one day later unless the evidence considered in the second application was material to her disability status at the time of the Commissioner's original

-19-

denial.[16] ECF No. 15, at 4.   The Commissioner argues that these documents are not material to the ALJ's decision to deny benefits and that the Commissioner's subsequent award of benefits cannot, without more, demonstrate the evidence submitted is material. ECF No. 18, at 8-10.

## VI.   ANALYSIS

In this case, the relevant time period under consideration is from March 31, 2008, Perrin's amended onset date, to the ALJ's date of decision, December 8, 2009.   Perrin bears the burden of establishing the elements of a Sentence Six remand exist with respect to that time period.   See Latchum, 2011 WL 3489880, at *6.

### A.   Effect of Subsequent Grant of Benefits

The Fourth Circuit has not addressed whether or under what circumstances an award of DIB benefits with an onset date one day removed from the date on which a decision denying a claimant's prior application became final constitutes new and material evidence under Sentence Six.   District courts within the Circuit have reached various conclusions. See, e.g., Hayes v. Astrue, 488 F. Supp. 2d 560 (W.D. Va. 2007) (granting Sentence Six remand where

---

[16] "Pursuant to the Social Security Administration's December 30, 1999, Emergency Message 99147, a subsequent grant of benefits cannot extend earlier than the day after the prior denial. See also Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX"), Volume I-5-3-17, § I.A. It is this procedure that creates the common 'day-later' change in eligibility determination." Allen v. Commissioner of Soc. Sec., 561 F.3d 646, 650 n.2 (6th Cir. 2009).

plaintiff submitted no medical evidence supporting his subsequent grant of benefits "[i]n light of the possible inconsistency between the first decision and the subsequent finding of disability . . . ."); Bradley v. Barnhart, 463 F. Supp. 2d 577 (S.D.W. Va. 2006) (holding that a subsequent favorable decision and the medical evidence upon which it was based constituted new and material evidence warranting remand). But see, e.g., Atkinson v. Astrue, 5:10-CV-298-FL, 2011 WL 3664346, at *17 (E.D.N.C. July 20, 2011) (denying Sentence Six remand where plaintiff made no showing that subsequent award undermined previous denial); Lucas v. Astrue, No. 1:09cv365, 2010 WL 1901788, at *13 (E.D. Va. May 10, 2010) (subsequent award that did not encompass the time period of the claimant's prior denial was not relevant to the previous decision); Sayer v. Astrue, No. 3:09-01061, 2010 WL 4919492, at *4 (S.D.W. Va., Nov. 29, 2010) (a subsequent award, on its own, did not constitute new and material evidence because "using a subsequent decision as independent evidence is tantamount to a collateral attack on the initial decision".)

The Sixth Circuit has held that a subsequent favorable decision did not warrant remand under Sentence Six where the plaintiff failed to show that the decision was supported by medical evidence that was itself new and material with respect to the prior unfavorable decision. See Allen, 561 F.3d at 653-54 (6th Cir. 2009) ("A sentence six remand would be appropriate based on [the

-21-

claimant's] subsequent favorable decision only if the subsequent decision was supported by new and material evidence that [the claimant] had good cause for not raising in the prior proceeding."). The Ninth Circuit came to the opposite conclusion. It upheld a district court's Sentence Six remand where only one day separated the denial of the plaintiff's first application and the disability onset date specified in a subsequent award notice because it was unclear from the record whether the decisions were reconcilable or inconsistent. See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) ("The 'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application indicates that further consideration of the factual issues is appropriate to determine the outcome of the first application should be different.").

This Court is not prepared to hold that mere temporal proximity between a benefits denial and a subsequent award's disability onset date warrants remanding the adverse decision under Sentence Six. See Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475-76 (4th Cir. 1999) ("The SSA's treatment of later-filed applications as separate claims is eminently logical and sensible, reflecting the reality that the mere passage of time often has a deleterious effect on a claimant's physical or mental condition."); Moraine v. Soc. Sec. Admin., 695 F. Supp. 2d 925, 965

-22-

(D. Minn. 2010) (holding that remand was not proper in the absence of an opportunity for the court to consider the basis for a subsequent grant of benefits).

Perrin carries the burden of demonstrating that remand is proper. Although she alleges that the Commissioner's subsequent favorable determination was based upon the medical evidence she submitted to the Court, she has not submitted any documentation of the decision to substantiate this claim. Nor has she provided any information concerning when she filed her second application, the impairments she alleged in it, the timeframe at issue, or when it was granted. Moreover, the Court does not know whether the Commissioner considered the medical evidence before the ALJ or altogether different evidence in arriving at the subsequent favorable decision. See Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001) (the district court did not err in denying plaintiff's motion for a Sentence Six remand where the plaintiff's second DIB "application involved different medical evidence, a different time period, and a different age classification"). In light of the fact that Perrin became an individual of advanced age on October 10, 2010, just over one month after the Appeals Council affirmed the ALJ's decision, it is entirely possible that Perrin's age played a determinative role in Commissioner's decision to award benefits on her second application. See Id.; Allen v. Astrue, No. 5:07CV49-J, 2008 WL 167219, at *6 (W.D. Ky. Jan. 16, 2008)

-23-

(hypothesizing that the subsequent favorable decision was based on the claimant's new age classification and corresponding medical-vocational rule directing a finding of disabled) aff'd Allen, 561 F.3d 646; 20 C.F.R. §§ 404.1563(a),(e), 404.1568(d)(4). Because Perrin has not articulated a basis other than temporal proximity from which to infer that the Commissioner's decision awarding her benefits contradicts the ALJ's prior decision denying benefits, the Court cannot conclude that the subsequent grant, on its own, constitutes new and material evidence under Sentence Six of 42 U.S.C. § 405(g). See Moraine, 695 F. Supp. 2d at 965; Atkinson, 2011 WL 3664346, at *17.  Rather, a Sentence Six remand is warranted in the event of a subsequent favorable decision "only if the subsequent decision was based upon evidence that is new and material in relation to the prior decision."[17] Allen, 2008 WL 167219, at *5.  The question is therefore whether the medical

---

[17] The Court agrees with the Sixth Circuit's reasoning in Allen:
> If a subsequent favorable decision—separated from any new substantive evidence supporting the decision—could itself be "new evidence" under sentence six, the only way that it might change the outcome of the initial proceeding is by the power of its alternative analysis of the same evidence. But remand under sentence six is not meant to address the "correctness of the administrative determination" made on the evidence already before the initial ALJ. In addition, it is overly broad to read the words "new evidence" in sentence six to include a subsequent decision based on the same evidence.

561 F.3d at 653 (footnote and citation omitted) (citing Melkonyan, 501 U.S. at 100 for the proposition that Congress intended to limit district courts' power to remand for "new evidence" under Sentence Six).

evidence upon which Perrin's subsequent grant was allegedly based constitutes new and material evidence in relation to the ALJ's December 8, 2009 decision.

## B. New Medical Evidence

As a preliminary matter, the Court notes that a claimant bears the initial burden of proving the existence of a disability, 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512, 416.912; Smith v. Califano, 592 F.2d 1235, 1236 (4th Cir. 1979). Moreover, the precise date of disability onset for progressive disorders such as arthritis may require the Commissioner to make a somewhat arbitrary determination. See Grundy v. Astrue, Civ. No. 5:10CV00053, 2011 WL 2610386, at *4 (W.D. Va. July 1, 2011). Therefore to the extent that Perrin did not satisfy her burden in her initial DIB application, she is not entitled to a second bite at the apple based upon evidence indicating that her condition deteriorated subsequent the Commissioner's unfavorable decision. Fleshood v. Astrue, No. 3:09CV833, 2010 WL 3893949, at *7 (E.D. Va. Sept. 8, 2010) (quoting Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984)); Evans v. Astrue, No. 3:09CV191, 2010 WL 451331, at *4 (E.D. Va. Feb. 8, 2010). Rather, the appropriate remedy under such circumstances is to file a second application, which is precisely what Perrin did. See Evans, 2010 WL 451331, at *4. The Court will nevertheless consider the evidence that Perrin

has submitted to determine whether it satisfies the standard for a Sentence Six remand.

The records Perrin has submitted to the Court do not appear to be cumulative or duplicative of the evidence that the ALJ considered. Accordingly, she has established that they constitute new evidence. See Wilkins, 953 F.2d at 96. Perrin has also satisfied elements three and four, which require her to establish good cause for failing to present the new evidence at a prior proceeding and to make a general showing of the nature of the evidence. See Miller, 64 F. App'x at 859; Womack, 2010 WL 4874935, at *4. Perrin had good cause not to submit the evidence to the ALJ, because the examinations were not conducted until after the ALJ rendered his decision.[18] See Owens v. Astrue, No. 7:09cv263, 2010 WL 3743647, at *5 (W.D. Va. Sept. 22, 2010). By submitting the medical records to the Court, Perrin has made a general showing of their nature. Id. Nevertheless, the Court finds that Perrin is not entitled to a Sentence Six remand because she has failed to establish that the records submitted relate to the period at issue

---

[18] The Secretary's regulations require a claimant to file an appeal and supporting evidence within 60 days of an adverse hearing decision. 20 C.F.R. § 404.968. Although, Perrin apparently appealed the ALJ's decision in a timely manner, she did not send the letter containing the new medical evidence to the Appeals Council until August 6, 2010. Pl.'s Supplement, at 1. Because the earliest medical record in the evidence submitted to the Court is dated March 24, 2010, it would appear that Perrin also had good cause for failing to submit the evidence in a timely manner to the Appeals Council.

in this action and that they might have changed the Commissioner's decision had they been considered. See Salling v. Apfel, 201 F.3d 437, 1999 WL 1032616, at *2 (4th Cir. Nov. 15, 1999) (unpublished table decision).

New evidence is relevant to the prior disability determination if it relates to the limiting effects of the claimant's impairments prior to the ALJ's decision and does not concern the subsequent deterioration of a previously non-disabling condition. See Fleshood, 2010 WL 3893949, at *7; Womack, 2010 WL 4874935, at *4. It appears to the Court that little of the evidence Perrin has submitted bears indicia relating it to her condition between March 31, 2008 and December 8, 2009. For example, none of the treatment and examination notes Perrin has submitted to the Court purport to contain observations concerning Perrin's condition prior to or at the time of the ALJ's December 8, 2009 determination. Nevertheless, presuming that the impairments of which Perrin complained in her first benefits application and at her administrative hearing did not deteriorate subsequent to the ALJ's decision, it is possible that later observations concerning these impairments might relate to their severity at the time of the ALJ's decision. This, however, is not the case with respect to Perrin's diagnoses of adjustment disorder and bilateral edema.

Perrin states that the new evidence shows that she was diagnosed with adjustment disorder with depressed mood on July 21,

2010 for which she was prescribed Lexapro. Pl.'s Supplement, at 1.

Dr. McAleer-Leavey listed "adjustment disorder with depressed mood"

under "new problems" when Perrin visited her on July 21, 2010.

Pl.'s Supplement, at 4.   This diagnosis post-dates the ALJ's

decision by more than seven months, and Dr. McAleer-Leavey's prior

treatment notes contain no mention of a mood disorder. Moreover,

Dr. McAleer-Leavey made no representations about the effects of

Perrin's mood disorder on her functional capacity at the time of

the diagnosis.   Although the administrative record confirms that

Perrin had a history of depression, (R. 342, 356), Dr. Kingston's

October 13, 2009 Medical Source Statement specifically stated that

emotional factors did not contribute to Perrin's functional

limitations, (R. 356).   Moreover, Perrin did not complain of

depression in her first benefits application or at her hearing

before the ALJ. Accordingly, the Court finds that the depressed

mood disorder diagnosis is merely evidence of deterioration of a

previously non-disabling condition subsequent to the ALJ's

decision. See Fagg v. Charter, 106 F.3d 390, 1997 WL 39146, *1-*2

(4th Cir. 1997) (unpublished table decision) (holding that evidence

was not material because it did not indicate that the claimant was

disabled or limited by the impairment during the relevant period

under consideration by the ALJ); Szubak, 745 F.2d at 833.

The same conclusion pertains to Dr. McAleer-Leavey's June 23,

2010 diagnosis of bilateral edema in Perrin's feet.   Dr.

McAleer-Leavey described the edema as "mild." Pl.'s Supplement, at 8. Perrin did not complain of lower extremity swelling in her original application for benefits or at her hearing before the ALJ. There was no evidence of edema in the record before the ALJ. Although NP Ross-Cleary, Dr. McAleer-Leavey, and Dr. Winfield examined Perrin prior to June 23, 2010, none noted edema until that date. Even if the edema were disabling, the Court finds the edema to be a later-acquired impairment with no relevance to Perrin's condition prior to the ALJ's decision. Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005) (holding that a doctor's diagnosis of impairments was irrelevant where there was no evidence that the impairments existed during the time period relevant to the ALJ's decision); Miller, 64 F. App'x at 860 (holding that additional medical records were not material because they reflected only mild impairments and were not accompanied by restrictions on the claimant's activities); Womack, 2010 WL 4874935, at *4.

The remaining evidence Perrin has submitted, including a diagnosis of chronic back pain, prescriptions for pain and asthma, and documentation that Perrin's hip and knee impairments persisted, arguably pertains to impairments that allegedly existed at the time the ALJ rendered his decision. Yet Perrin has failed to demonstrate that the ALJ's decision might reasonably have been different had he considered this evidence.

The mere fact that Dr. McAleer-Leavey diagnosed Perrin with chronic back pain on July 21, 2010 does not establish that the ALJ's decision might have been different had the diagnosis been before him. see Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (explaining that a diagnosis of arthritis connotes nothing about the severity of the condition); Cameron v. Astrue, No. 7:10cv00058, 2011 WL 294581, *8, (W.D. Va. July 21, 2011) (citing Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986). Dr. McAleer-Leavey's examination notes do not indicate the basis for the diagnosis or reflect the extent to which she believed Perrin's back pain interfered with her activities. See Miller, 64 F. App'x at 860. In fact, it appears as though Dr. McAleer-Leavey's diagnosis is based entirely on Perrin's self-reported symptoms and medical history. Id. Perrin's original benefits application listed mild arthritis in her back as a condition that impaired her ability to work. R. 150. The record indicates that x-rays of Perrin's lumbosacral spine in 2007 showed osteoarthritis and that she complained of pain when asked to rotate through her lumbar spine during Dr. Gibson's examination on March 7, 2008. R. 285. Yet, there is no evidence that Perrin sought treatment for back pain in the administrative record, and Perrin did not complain of back pain during her hearing before the ALJ. See McAbee v. Halter, 21 F. App'x 126, 130 (4th Cir. 2001). Accordingly, there is little reason for this Court to believe a diagnosis of "chronic back pain"

rendered more than seven months after the ALJ issued his decision would compel the ALJ to render an alternative disability determination.[19]

The Court also finds evidence of medication that Perrin's physicians prescribed subsequent to the ALJ's decision immaterial. The new evidence indicates that Dr. McAleer-Leavey wrote Perrin a prescription for Vicodin on March 24, 2010, indicating that the prescription was "only until [Perrin] could be seen by a pain management [specialist] or Ortho [sic]." Pl.'s Supplement, at 24. Perrin subsequently visited Dr. Winfield, a pain management specialist, who prescribed a Duragesic patch for the pain in her hips and knee. Pl.'s Supplement, at 22. With the Duragesic patch, Perrin reported a 60-70% recovery, and Dr. Winfield noted reported improvement in her functional abilities. Pl.'s Supplement, at 9-10. In arriving at the December 8, 2009 decision, the ALJ considered the limiting effects of Perrin's pain on her ability to work. Perrin reported her pain as being an eight out of ten at her administrative hearing, (R. 36), and the record reflects that Perrin had previously been prescribed Vicodin and Voltaren for pain

---

[19] The Court seriously questions whether the diagnosis even relates to Perrin's condition at the time of the ALJ's decision considering the length of time between the ALJ's decision and the subsequent diagnosis with no intervening complaints of pain. See Evans, 2010 WL 451331, at *4 (concluding that a physician's report rendered more than one year after the ALJ's decision was not new and material evidence, because, although it pertained to an impairment in existence at the time of the ALJ's decision, it addressed the deterioration of a condition that was previously non-disabling).

relief, (R. 237, 347). The ALJ's disability determination specifically accounts for the fact that pain from arthritis in Perrin's hips and knee required that she work in an environment where she could alternate between sitting and standing at will. R. 12, 15. Although the prescription for the Duragesic patch suggests that Perrin's hip and knee pain was chronic, it in no way indicates that her functional capacity was less than that observed by the ALJ as of December 8, 2009. See McAbee, 21 F. App'x at 129 ("[N]ew evidence must . . . be sufficient, in light of the record, to alter the ALJ's determination as to 'the effect of pain on a claimant's ability to function.'") (quoting Foster v. Heckler, 780 F.2d 1125, 1128 (4th Cir.1986)). On the contrary, the fact that her functional abilities apparently improved while on the Duragesic patch suggests that Perrin's pain was manageable rather than disabling. Pl.'s Supplement, at 10.

Similarly, the fact that Perrin obtained prescriptions for asthma medications, including Flovent Diskus, Albuterol Sulfate, ProAir, and Qvar, subsequent to the ALJ's decision does little to demonstrate that the ALJ might reasonably have reached a different conclusion had he considered this evidence. The administrative record contains evidence that Perrin suffered from asthma. R. 291. At the administrative hearing, Perrin testified that she had asthma and that she used an inhaler. R. 45. She also testified that walking for long periods of time and being around smoke and other

-32-

fumes aggravated her condition. R. 45-46. The treatment and examination notes from the visits at which Dr. McAleer-Leavey prescribed these medications relate similar information under "History of Present Illness," but contain no opinions from Dr. McAleer-Leavey concerning the effect of Perrin's asthma on her functional capacity prior to the ALJ's decision, or for that matter, at the time of the examinations. Pl.'s Supplement, at 7, 23. In reaching his decision, the ALJ considered all of Perrin's alleged impairments, but found that only Perrin's bilateral hip arthritis and arthritis in her knee limited her ability to work. R. 11-12. In light of the fact that the ALJ apparently considered the limiting effects of Perrin's asthma in reaching his decision and the fact that the medications prescribed subsequent to the ALJ's decision shed little light on how or whether Perrin's asthma affected her functional capacity, the Court finds that evidence of these prescriptions would not have compelled the ALJ to render a different decision. See Miller, 64 F. App'x at 860; Fagg, 1997 WL 39146, at *1-*2.

Finally, the fact that the new evidence indicates that Perrin's hip and knee pain persisted is not material. The treatment and examination notes that Perrin has submitted do not suggest the effect of Perrin's pain on her functional capacity, see McAbee, 21 F. App'x at 129, except to indicate that her functional abilities may have improved with the Duragesic patch. R. 10. At

the administrative hearing, Perrin described the pain in her hips and knee as nine out of ten when not medicated and eight of out ten when medicated. R. 36. Dr. Kingston described Perrin's hip pain as constant in the Medical Source Statement. R. 356. As explained above, the ALJ determined that Perrin's knee and bilateral hip arthritis were severe, and he considered the limiting effects of Perrin's pain, including the fact that she ambulated with a cane, in arriving at his decision that she was capable of performing a limited range of medium work. R. 12-15. Accordingly, the fact that Perrin's hip and knee pain persisted after the ALJ rendered his decision is unlikely to have any bearing on that decision.

Perrin has failed to demonstrate that the evidence she submitted to the court relates to her condition prior to the date on which the ALJ rendered his decision and might reasonably have altered that decision had the ALJ considered it. Accordingly, she has not satisfied her burden under Sentence Six of 42 U.S.C. § 405(g), and remand is not appropriate.

## VII. CONCLUSION

Although the Court has considered the evidence that Perrin submitted in her Motion to Supplement to determine whether it warrants consideration by the Commissioner, the Court cannot incorporate the evidence into the administrative record. Perrin's Motion to Supplement the Record is therefore DENIED.

-34-

Perrin has not argued that the ALJ's December 8, 2009 decision was not supported by substantial evidence. Rather, she argues that evidence of a subsequent award of benefits with a disability onset date one day removed from that of the Commissioner's decision denying benefits, when considered together with later-acquired medical evidence, warrants remanding the unfavorable decision to the Commissioner for further consideration. Having considered courts' divergent positions concerning the effect of the Commissioner's subsequent favorable decision on an earlier denial of benefits, this Court concludes that the favorable decision alone does not constitute new and material evidence under Sentence Six of 42 U.S.C. § 405(g). Moreover, in the instant case, the medical documentation upon which the Commissioner's favorable decision was allegedly based does not justify remanding Perrin's claim for further consideration. Much of the evidence does not appear to relate to Perrin's impairments at the time the Commissioner's decision became final. With respect to the evidence that arguably relates to Perrin's condition at the time of the unfavorable decision, the Court is unable to conclude that the Commissioner might reasonably have rendered a different decision had it been considered. Accordingly, the court concludes that Perrin is not entitled to a Sentence Six remand.

## VII. <u>RECOMMENDATION</u>

For the foregoing reasons, the Court RECOMMENDS that the final decision of the Commissioner be AFFIRMED, that the defendant's motion for summary judgment be GRANTED, and that the plaintiff's motion for summary judgment be DENIED.

## VII. <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof. <u>See</u> Fed. R. Civ. P. 72(b).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>,

474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984);

<u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).


UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

December 16 , 2011

-37-